# GEORGE MENTZER
### v.
## JOHN L. ROBINSON.

*Partnership—Dissolution—Settlement—Construction of—Deceit.*

Upon the dissolution of a partnership between appellant and appellee, and the settlement of the partnership affairs, an agreement was signed, which provided that appellant should pay appellee $2,154.30 for his entire interest in the business and property of the firm, including all interest in the book accounts due said firm, and pay all unpaid debts or claims against it. There was present a book of accounts showing $1,975 due the firm, which appellee, who had been the book-keeper, said "was in the neighborhood of correct." Appellant afterward learned that a considerable amount of these accounts had been paid to appellee. Upon action brought by appellee to recover the unpaid balance of the amount provided by the above agreement, in which the defense was partial failure of consideration, it is *held:* That appellant had purchased, not an interest in a definite amount of accounts, but appellee's interest, whatever it was; and that the question whether appellee was guilty of deceit, was one of fact, and the judgment of the trial court would not be disturbed on that point.

[Opinion filed November 23, 1889.]

APPEAL from the Circuit Court of Piatt County; the Hon. E. P. VAIL, Judge, presiding.

Messrs. S. R. REED and H. H. CREA, for appellant.

Under Sec. 9 of Chap. 98, Negotiable Instruments, Starr & Curtis' Stat., page 1661, either total or partial failure of consideration may be pleaded in defense of an action on an instrument in writing, and parol testimony may be introduced in support of such plea. This section has governed in many adjudicated cases in this State. Great Western Insurance Company v. Rees, 29 Ill. 272; Gage v. Lewis, 68 Ill. 604; Oertel v. Schroeder, 48 Ill. 133.

A partner not well acquainted with the affairs of the firm purchased a portion of the partnership interest of the other partner, and gave his note, relying on the representations of the partner as to its value, which he subsequently ascertained to be fraudulent; the interest so purchased was worthless; the firm being insolvent these facts constituted a good defense to the note. Smith v. Smith, 30 Vt. 139.

One partner may sue his co-partner in assumpsit after dissolution, to recover back money paid by mistake on an adjustment of the partnership concerns. Bond v. Hays, 12 Mass. 34; Beidler v. Shellenberger, 42 Iowa, 203.

Messrs. LODGE & HICKS, for appellee.

PLEASANTS, P. J. From July, 1885, to May, 1888, the parties to this suit were equal partners in the business of making and selling tile and brick at Cerro Gordo. While appellant attended mainly to the manufacture, appellee made sales and undertook to keep the books. Having no knowledge of the art according to any system, his method of keeping them, if it might be so called, was very imperfect, and dissatisfaction having arisen between them, they proceeded to arrange terms of settlement and dissolution. Without difficulty they agreed upon the disposition of all the partnership matters except its outstanding credits. As to these appellant was unable to satisfy himself from the books. He could not

Mentzer v. Robinson.

undertake, with intelligence and confidence, to settle with anybody by them. A clerk was therefore employed to gather, sift, arrange and transcribe into a new book the scattered and tangled entries in the old. After a month's labor, with frequent explanations, or attempts at explanation by appellee, he completed the transcript as well as he could, and notified the parties. They met on May 7, 1888, appellant being attended by counsel, to learn the result and dispose of the accounts. The aggregate of the balances and accounts due the firm, as shown by the transcript, was a little less than $2,000. Appellant knew nothing about them. Appellee said they were in the main correct, but there were probably errors—he couldn't be positive in regard to them, " they were in the neighborhood of correct. " His idea of them is shown by the clerk, who states that they looked through the book and read quite a number of the accounts, and that as he went over them " Mr. Robinson would say 'that is about correct,' and then he would say 'I do not think he owes. that much,' and on one or two occasions 'I think the man owes more than the book shows;' and we conversed in that way through the different accounts." After all this talk it was proposed that one set a price on them at which the other would either buy or sell, but appellant objected, and suggested instead that they be put up at auction, proposing to make the first bid. That being acceded to he bid $500, and, no more being offered, took them. His counsel thereupon wrote the agreement by which the partnership was dissolved and all its affairs settled as between the partners. It provided, among other things not necessary to be here noticed, that appellant should pay to appellee on or before the 27th of that month $2,154.30 "for his entire interest" in the business and property of the firm, " including all interest in the book accounts due said firm," and " pay all unpaid debts or claims against it." The $500 bid for the accounts was included in the amount above stated. In proceeding to collect the accounts and balances appearing by the transcript to be due, appellant learned that a considerable number of them had been settled and satisfied before the dissolution agreement was made, and therefore when called on for pay-

ment according to that agreement he refused, unless appellee would make them good to him.

Thereupon this suit was brought against him in assumpsit. He pleaded the general issue, and it was stipulated that he might introduce any matter of defense, and the plaintiff any in reply that would be admissible under any proper plea or replication.   The cause was tried by the court without a jury, at the February term, 1889, and judgment rendered for the plaintiff for $1,017.95, being the full amount due by the terms of the agreement with interest, after crediting $1,200 paid in September.

It appears from the record and argument that the defense relied on was partial failure of consideration.   Appellant insists that what he contracted to pay for was an aggregate of dues on book account amounting to $1,975, and what he received was considerably less, and that the entire amount of the deficiency should be deducted from the price agreed to be paid.   But the agreement itself, which was in writing, and all the other evidence on the subject, shows that he contracted for only a half interest in the dues referred to; and therefore, in any view of the defense—whether as partial failure of consideration, or by way of set-off or recoupment for breach of warranty, or for deceit as to the aggregate amount —he would be entitled to a deduction of no more than one-half of the deficiency shown.   For that reason alone the court might well have refused to hold the propositions of law set out in the abstract; for as to the half interest he already owned as partner, and therefore could not then buy, no warranty or deceit in relation to its amount or value could have been a legal injury or cause of damage, or a foundation for any legal claim by way of defense in this suit, since it could not have affected the actual amount or value of that interest, nor induced the purchase of the other.   And if he did not contract for any certain amount of firm dues, but only for the interests of appellee therein, whatever they might be, and received all of that interest in all there were, then there was no failure of consideration.   The instructions referred to might have been refused in that view of the case.   We think

the evidence fairly sustains that view of it.  The agree-
ment states no amount, directly or indirectly, definitely
or approximately.  Appellee at the time stated no certain
amount, nor any within certain limits.  It is true a book
was present which was contemplated as the book of the
accounts intended, and that it showed a certain amount,
and a certain amount was then and there stated as being
so shown.  But as was well known to both the parties,
that book purported to be only a transcript of entries from
the original books of the firm, sifted and re-arranged.  No
time was taken by them to ascertain how just and accurate
it was.  Appellee stated—what appellant also otherwise
knew—that he had not kept the original in any systematic
order, and all else that he said about them plainly showed his
unwillingness to represent them as full and accurate, or to say
with any definiteness how nearly accurate he believed them
to be.  Appellant bought the accounts actually due, relying
doubtless upon the book as far as he might with his knowl-
edge of the keeper and his methods and statements; but he
certainly did not contract for any certain amount or any
within stated limits, and it would hardly be contended that if
they had been found to exceed that appearing by the trans-
cript he would have accounted or been bound to account to
appellee for half the excess.

Then the only real cause of complaint, if any, he had against
appellee in the matter, was deceit, fraudulent misrepresenta-
tion or suppression of facts known to him in relation to the
amount of actual dues.  This was a pure question of fact.
The charge rests mainly upon the magnitude of the difference
between the aggregate amount actually due and that appear-
ing so by the transcript, and certain statements said to have
been made by appellee, after the dissolution, of the amount
he supposed to be due, which was not far from the real
amount.  But he testified that he stated the same opinion to
appellant before the dissolution, though this was denied, and
to circumstances explaining, in part at least, how there came
to be this difference, some having a general bearing and
others relating only to particular accounts.  The appearance

on the books of quite a number of those said to have been
settled or otherwise charged in error was accounted for by the
parties charged, who were called to testify for the appellant.
It would be useless, however, to consider these circumstances
and explanations more particularly.    They tended to rebut
the evidence of fraudulent misrepresentation or concealment
of facts by appellee, and were for the court below to consider
and weigh.    Upon the evidence as it appears in the record,
we think the charge is not sustained, and if we were in
greater doubt, would defer to the conclusion of the judge
who had the advantage of seeing and hearing the witnesses.

*Judgment affirmed.*